AMELIO CORTÉS MEDIALDUA, demandante y apelante, v. JUAN PALÉN AGUILA, hoy su Sucesión, demandados y apelados.

No. 4408.—*Sometido:* Mayo 4, 1928. *Resuelto:* Marzo 19, 1929.

*A. Lens Cuena*, abogado del apelante; *L. Mercader*, abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Amelio Cortés demandó a la Sucesión de Juan Palén compuesta de las personas que arriba se indican, en cobro de cuatro mil dólares.

Alegó que el día 24 de diciembre de 1925 Juan Palén recibió de doña Francisca Palén la dicha suma, comprometiéndose a pagarle el 30 de junio de 1926, suscribiendo al efecto y entregando a doña Francisca la siguiente obligación:

"Diciembre 24, 1925.—Debo y pagaré a Doña Francisca Palén, la cantidad de cuatro mil dólares, los que le pagaré el día 30 de junio de 1926. Y para que conste le firmo el presente aquí en Arecibo a 24 de diciembre de 1925.—Firmado, Juan Palén.—Son $4,000."

Y alegó además que en abril de 1926 doña Francisca le cedió y traspasó el referido documento por valor recibido;

que Juan Palén falleció en mayo de 1926, y que la obligación está vencida y no le ha sido satisfecha ni en todo ni en parte.

Los demandados en su contestación negaron la deuda de su causante para con doña Francisca Palén, negando además que su causante suscribiera el documento transcrito en la demanda y que dicho documento fuera cedido y traspasado al demandante.

Como defensa alegaron que doña Francisca era hermana de Juan Palén y vivía de balde desde hacía años una casa de su hermano; que Palén tenía un comercio importante, prestaba dinero y durante los último seis años atendía a la manutención de su hermana y su familia, habiendo dejado al fallecer más de veinte mil dólares; que otorgó testamento y como nada dejara en él a su hermana ésta le pidió que le regalara algún dinero para comprar una casita lo que le prometió Palén y como muriera sin cumplir su promesa doña Francisca y su esposo "han pretendido figurar el préstamo que dicen constar en el simulado y falso pagaré transcrito en la demanda" y que como doña Francisca "no se atreviera cobrar directamente a los demandados el susodicho falso y simulado pagaré inserto en la demanda de este pleito, se puso de acuerdo con el demandante para que éste apareciera como cesionario, a pesar de que ambos saben que esa obligación es apócrifa."

Los demandados formularon además una contrademanda alegando la falsedad del documento a que se ha venido haciendo referencia y solicitando de la corte un pronunciamiento específico sobre el particular.

Así las cosas fué el pleito a juicio. Ambas partes practicaron prueba y la corte finalmente dictó sentencia declarando la demanda sin lugar y con lugar la contrademanda y en su consecuencia nulo por simulado el pagaré otorgado el 24 de diciembre de 1925 por Juan Palén a favor de Francisca Palén por la suma de cuatro mil dólares, con las costas a la demandante.

No conforme la demandante apeló para ante este tribunal señalando en su alegato varios errores que pueden reducirse a uno: error en la apreciación de las pruebas.

Para fundar su fallo el juez sentenciador emitió una opinión que contiene el análisis de la prueba. Es así:

"El pagaré de que se trata es por cuatro mil dólares, venciendo el 30 de junio de 1926. El día 7 de abril de 1926 aparece traspasado al demandante por la suma de tres mil quinientos dólares. El deudor, Juan Palén, murió en mayo de 1926, un mes antes del aludido traspaso y un mes después de la fecha fijada para vencerse el pagaré. Palén era comerciante de buen crédito establecido en Arecibo, con bienes y fondos suficientes en el Banco Comercial para atender una obligación de esa naturaleza.

"Un examen cuidadoso de las pruebas en este caso revela que en el alegato traspaso que del pagaré objeto de esta demanda hizo Francisca Palén al aquí demandante no medió causa cierta. Gabriel Terraza, testigo del demandante y esposo de la Palén, declaró que el traspaso del pagaré de $4,000.00 se hizo por $3,500.00 porque necesitaba dinero con motivo de la ejecución de una finca que le seguía el Banco Comercial, y que el documento se traspasó por precio que se satisfizo a varios plazos. El documento, sin embargo, establece que la cesión se efectúa por la suma de $4,000.00, que confiesa haber recibido. Siguiendo al testigo, llama la atención que la necesidad urgente de enajenar un pagaré de $4,000.00 por $3,500.00 que vencía cincuentitrés días más tarde, para evitar la ejecución de una propiedad se hiciera en las circunstancias en que lo fué. Que esa manifestación no era reflejo de la realidad lo demuestra que el propio testigo declaró más tarde que el importe de esa enajenación 'lo guarda, que no lo necesita, que no está depositado,' aunque acto seguido manifestó que 'está invertido en varias cosas, en terrenos,' sin explicar sus anteriores manifestaciones con respecto a la necesidad de traspasar el pagaré para evitar una ejecución. Declaró que empleó los $3,500.00 y que su esposa 'tiene conocimiento de eso,' pero ésta, la propia Francisca Palén, declaró que ella no sabe en qué se empleó ese dinero. Por su propio peso cae de su base la teoría de que la enajenación del pagaré se debió a la necesidad que por dinero inmediato tenía Francisca Palén, según el demandante. Éste, en la silla de testigos, manifestó que adquirió ese pagaré; y el testigo Juan Candelaria, aunque su declaración no es muy satisfactoria en cuanto a otros extremos, manifestó terminantemente que el mismo deman-

dante le hizo saber a presencia de Miguel A. Ramos refiriéndose al traspaso que 'él (Cortés) no llevaba nada en eso, que lo hacía por ayudar a Gabriel Terraza.' Ramos no declaró porque ha fallecido, pero el demandante admite que tuvo una conversación con Ramos en presencia de Candelaria sobre el asunto si bien que no hizo esas manifestaciones. La Corte cree, por todas las circunstancias, que sí las hizo.

"El demandante declaró que él vió a Palén en su lecho de enfermo y le habló del pagaré y que Palén asintió a que lo adquiriera. Si a Palén le obsecionaba la idea de que su hermana tuviera una casa como se observará más adelante, no se explica que Palén, teniendo bienes suficientes para cubrir la suma envuelta, asintiera a una transacción en que su hermana perdía quinientos dólares, cuando el pagaré vencía muy poco tiempo después. Pero es que la viuda de Palén declaró enfáticamente, con todo viso de verdad, que ella nunca vió al demandante en su casa visitando al enfermo, y que la primera vez que le veía era en el momento de declarar.

"Las pruebas revelan, además, que en el otorgamiento de este pagaré por Juan Palén a favor de su hermana Francisca tampoco medió causa cierta, y que este hecho le constaba al demandante. Gabriel Terraza declaró que él y Juan Palén tenían una casa de comercio que hubieron de liquidar; que quedaron adeudando $18,000.00; que para el pago de esa suma hipotecó todas sus fincas; que Juan Palén quedóle debiendo $8,000.00, por los cuales otorgó dos pagarés, cada uno de $4,000.00, pagarés que tuvieron varios vencimientos y prórrogas; que uno de esos pagarés, el de objeto de este pleito, se hizo a nombre de su esposa porque así se lo pidió Juan Palén que quería que 'le dejara ese dinero a ella', 'que deseaba que fuera para su esposa (Francisca Palén) para comprarle una casita a ella, al morir (Juan Palén),' Francisca Palén dice que ella no sabe cómo se hicieron las negociaciones, pero sí sabe que fué Gabriel Terraza, su esposo, el que propuso que 'los pagarés se hicieran a su nombre, porque mi esposo quiso que se hicieran a nombre mío.'

"Es nuestra firme creencia que Juan Palén nada debía a su hermana, es decir que no hubo causa cierta en la libración del pagaré. Tan pronto Palén y Terraza liquidaron su casa comercial, Palén se estableció de nuevo. Puso su comercio cerca de la Plaza del Mercado. Trabajó con fortuna. Se hizo de 'muchos bienes,' según Terraza. Tuvo cuenta corriente en el Banco Comercial con un movimiento de miles de pesos', según el testigo Iglesias, pagador del Banco. No se preocupó nunca por pagar el documento hecho a

favor de su hermana. Un mes antes de su muerte, al traspasarse el documento al demandante con una pérdida de quinientos dólares, Juan Palén tenía capital suficiente para honrar el documento. Si bien Palén dijo al Notario Zeno que él le debía esa suma a su hermana, la Corte se explica esa conducta de Palén. Él debía gratitud a su hermana que le estaba criando un hijo natural y siempre tuvo la idea de asegurarle a su hermana la propiedad de una casa y véase que Gabriel Terraza habla de la insistencia de Palén en extender el pagaré a favor de ella 'para que comprase una casa, si él moría.' Y se observa que a, pesar de hablarse de dos pagarés, Francisca Palén declaró repetidas veces que su hermano 'no le debía nada más que cuatro mil dólares;' y que tenía ese dinero 'para comprar una casa.' ''

Aunque podemos explicarnos la sentencia de la corte y quizá haya algo de verdad en ella, un examen cuidadoso y repetido de los autos nos lleva a concluir que la prueba de la simulación no es bastante para destruir la presunción de verdad que lleva consigo el documento, cuya autenticidad está fuera de dudas, y lo declarado por las personas directamente relacionadas con la transacción.

El primer testigo que declaró fué el demandante mismo. Es comerciante en Arecibo, socio gestor de la casa Marqués Hermanos, Tesorero de la Plata Sugar Co. y de la Soller Sugar Co., devengando mil dólares anuales por cada una de las tesorerías, conoce a doña Francisca Palén y tuvo con ella el negocio de la cesión del pagaré por medio de su esposo Gabriel Terraza. Este le dijo que necesitaba dinero para cancelar una hipoteca y le dió tres mil quinientos dólares por el pagaré. Antes de cerrar el negocio habló con el propio Juan Palén quien estuvo conforme. Contestando a preguntas del abogado de los demandados dijo que vió a Palén en su casa cuando estaba ya enfermo; que entregó a Terraza $1,750 en abril, $1,500 en mayo y el resto en junio; que Terraza es empleado de la Plata Sugar Co. y de la Soller Sugar Co., ganando $75 mensuales en cada una. El contrainterrogatorio fué largo. El testigo no incurrió en contradicciones y explicó cuanto se le pedía.

Luego declararon los Sres. Eduardo Yglesias Jordán, pagador del Banco Comercial de Puerto Rico, Sucursal de Arecibo, y Alfonso Alfonzo, Sub-gerente del propio banco con el cual tuvo negocios por años Juan Palén, y de modo terminante reconocieron como de Juan Palén la firma que aparece al pie del pagaré. Este fué entonces admitido como prueba, con la oposición de los demandados.

El siguiente testigo fué el abogado y notario Gustavo Zeno Sama que expresó, copiando sus exactas palabras:

"Sí, señor; algún pagaré. Precisamente al otro día que fué a hablarme para que le preparara su testamento me ordenó que le hiciera un pagaré por cuatro mil dólares a favor de su hermana Francisca Palén y mientras escribía el pagaré en la maquinilla me dijo, que le adeudaba a esa señora una suma igual y le había suscrito otro pagaré."

Palén murió. De él queda el pagaré por él firmado que habla por sí mismo y lo dicho por el notario Sama que fué admitido sin objeción. La obligación no había sido satisfecha. El demandante presentó así a la corte, *prima facie,* un caso completo. Pero hizo más el demandante. Presentó como testigo a Gabriel Terraza Ferrer. Dijo que necesitando dinero con motivo de la ejecución de una finca que se le estaba haciendo por el Banco Comercial, negoció el pagaré con el demandante con el consentimiento de su esposa. El demandante le dió tres mil quinientos dólares en varios plazos. Explica el origen del pagaré. Fué socio de Palén en el comercio. Liquidaron quedando a deber unos diez y ocho mil dólares y tuvo que hipotecar sus fincas para garantizar las deudas, aceptando de Palén dos pagarés que se fueron liquidando, renovando, poniendo a nombre de otras personas y últimamente el de cuatro mil dólares objeto del pleito se puso a nombre de su esposa "porque Juan Palén dijo que deseaba que fuera para mi esposa para que comprara una casa ella al morir." Sometido a un hábil interrogatorio, resistió bien la prueba, a nuestro juicio.

¿Cuál fué la evidencia aportada por los demandados? Como su primer testigo llamaron a declarar a Francisca Palén quien reconoció el testamento otorgado por su hermano en el que nada le dejó. Reconoció también que vivía una casa de su hermano sin pagar alquiler pero explica que con ella vivía un niño hijo natural de su hermano a quien ella cuidaba. Repetidas veces contesta que la deuda representada por el pagaré era cierta y que su esposo autorizado por ella negoció el pagaré con el demandante.

Siguen las declaraciones de Frutos Palén y José Terraza. Hablan de los libros comerciales de Juan Palén en los que no aparecía la deuda consignada en el pagaré. También de la ayuda que Palén prestaba a su hermana y de un regalo de una pianola que hizo a su sobrina, hija de su hermana.

José Alvarez, dependiente de Juan Palén, dice que éste enviaba a su hermana un peso cincuenta centavos diarios y que cuando hablaba con doña Panchita (Francisca Palén) ésta le mostraba su gratitud hacia su hermano. No le habló de deudas. Sabe que doña Panchita cuidaba un hijo de su hermano. Gonzalo Acevedo conoció a Juan Palén como un comerciante que hacia la mayor parte de sus operaciones de contado; que tenía capital y dejó bienes al morir. A preguntas del abogado del demandante declaró que dejaría al fallecer como cuatro o cinco mil pesos de deudas.

Juan Candelaria declara que Juan Palén nada debía a doña Francisca. Al pedírsele que explicara la razón de su dicho, contestó: "Trabajaba desempeñadamente y hacía grandes compras. Cuando hacían una pequeña rebaja él pagaba de contado." Se refirió a cierta conversación sostenida por el demandante con Miguel Ramos, fallecido, en relación con la cesión del pagaré en la que "dijo Cortés a Ramos que no llevaba nada en eso. Solamente que lo hacía por ayudar a Gabriel Terraza que estaba colocado allí."

Gregoria Candelaria, la viuda de Juan Palén, una de las demandadas, declara que Francisca Palén "me dijo: en caso

de que muera Juan, resulta que nosotras te consideramos como a él, porque se trata de la esposa de él; y lo quiero mucho a él, y hoy que muera, en las mismas condiciones que lo quiero a él quiero que nos llevemos nosotras según me llevé con él; y quiero que hoy por mañana que muera él, tú, sabes que es el único ser que me ayuda a mí y quiero que tú . . . Quiso decirme que ella . . .—P.—No lo que quiso decir, lo que le dijo.—Que como no tenía donde vivir y la única ayuda era ese hermano, y en caso de que muriera le dejara la casa donde vivía ella, para ella acabar de educar a sus hijos y ayudarse.''

Dice que nada sabía del pagaré y asegura que el demandante jamás estuvo en su casa durante la enfermedad de su marido.

Declaró también el abogado de los demandados Sr. Mercader sobre negociaciones que tuvo con Juan Palén exponiéndole éste que quería comprar cierta casa para ayudar a su hermana; que Palén era hombre de negocios que prestaba además dinero a módico interés; que el demandante estuvo varias veces en su bufete hablando de las deudas de la Sucesión Palén para con Marqués Hermanos pero no de la del pagaré; que Palén dejó al morir bienes, entre ellos más de mil cuatrocientos dólares en efectivo, etc.; que nada debía a su hermana. Repreguntado sobre esta afirmación, ocurrió lo que sigue:

"P.—Por qué manifiesta que nada se debía a Francisca Palén, por qué esa manifestación tan rotunda?—La hago porque conocía también el hecho de que este hombre fuera a suplicarme que le vendiera la casa.—P.—Es una deducción que hace?—De los hechos de haber venido él a comprarme la casa y él dijo que le vendiera la casa.—P.— Es una deducción que saca?—Sí, señor; porque estaba en malas condiciones su hermana y no tenía de qué vivir.''

Se aportaron ciertos documentos en relación con los bienes dejados al morir por Palén.

¿Puede esa prueba de los demandados tener la fuerza de

destruir el caso *prima facie* del demandante? En manera alguna a nuestro juicio.

Los demandados no sólo alegaron que su causante nada debía, si que también que no había suscrito el pagaré. La prueba demostró de modo evidente que la firma de Juan Palén que aparece al pie del pagaré es genuina.

El hecho de que el documento rece que se traspasó por todo su valor de $4,000 y el demandante declare y Terraza admita que sólo fué por $3,500, no demuestra la inexistencia de la transacción. Si los testigos hubieran sido personas acostumbradas a mentir les hubiera sido muy fácil ajustar sus declaraciones a la letra del documento. Parece que prefirieron decir la verdad aunque surgiera la incongruencia advertida.

El hecho de que Terraza declarara como dice el Juez sentenciador en su opinión que guardaba el dinero y que luego dijera que lo había invertido, no es una contradicción absoluta. Se puede guardar dinero ajeno en una caja o invirtiéndolo sabiamente para que no esté ocioso y produzca. Y que el segundo medio, cuando se hace en debida forma, es mejor, aparece maravillosamente ilustrado en la parábola de los talentos. Y la circunstancia de que necesitara negociar el documento para hacer frente a una ejecución hipotecaria, no está en pugna con el posterior empleo del dinero. Había mediado tiempo y pudo servir para una y otra cosa.

No podemos percibir que tengan importancia las contradicciones a que se refiere el juez entre las declaraciones de Terraza y su esposa en cuanto al conocimiento de ésta sobre en qué se había invertido el dinero.

Lo que el testigo Candelaria puso en boca del demandante en su conversación con Ramos, es tan vago que no puede servir para concluir que se trataba de una cesión simulada. Era lo lógico que Terraza acudiera a Cortés dadas las relaciones existentes entre ellos y era natural que Cortés deseara ayudar a Terraza y que lo hiciera sin perjudicarse.

El demandante dijo que había ido a ver a Palén cuando estaba enfermo. La viuda asegura que el demandante no estuvo a ver a su marido. El conflicto existe. Son dos testigos igualmente interesados. La corte se inclinó a favor de la viuda. No se trata de un hecho fundamental, decisivo, y aunque se reconociera que la viuda fué la que estuvo en lo cierto, ello implicaría que el demandante no estuvo a ver a Palén y afectaría en general al mayor o menor grado de credibilidad del demandante como testigo, pero no destruiría por completo los demás particulares de su declaración.

En manera alguna podemos estar conformes en que las pruebas revelen que en el otorgamiento del pagaré a favor de doña Francisca no mediara causa cierta. La declaración de Terraza sobre la vieja deuda procedente de la liquidación de la casa comercial Palén & Terraza y sobre el otorgamiento de los pagarés, no ha sido destruida por ninguna prueba, y es lógica. Se trataba de una familia. El hecho de que no obstante ser una deuda, Palén la aprovechara para asegurar el futuro a su hermana, nada tiene de particular.

¿Por qué, si se entra en el terreno de las suposiciones, no pensar que al disolverse la sociedad de los hermanos políticos Palén y Terraza, fué Palén el hombre fuerte y listo que quedó aparentemente sin deudas para poder abrirse paso como se abrió en los negocios y Terraza el hombre modesto que asumió todas las cargas?

El carácter de ambos se refleja en los rumbos que siguieron después de la disolución de la sociedad. Palén fué al campo de la lucha activa; Terraza, al de la dependencia, llevando libros en casas de comercio. Nada de extraño es que Palén fuerte, próspero y activo, amigo de regalar, apareciera como protector aun siendo en verdad deudor, en el modesto hogar de su hermana. Llevaba a él seguramente los extras que no alcanzaba a proporcionar el sueldo de Terraza. Pero de esto a decir que Terraza y su hermana eran insolventes como

se alegó por los demandados en su contrademanda, hay gran distancia.

Puede la prueba aportada por los demandados hacer dudar al juzgador, pero no es suficiente como ya hemos dicho para destruir la presunción de verdad que surge del mismo pagaré, para asegurar que son falsas las manifestaciones de Terraza y el demandante.

Siendo ello así es necesario concluir que la Corte de Distrito cometió los errores que señala el apelante, debiendo su sentencia *revocarse y dictarse otra declarando la demanda con lugar y sin lugar la contrademanda,* todo sin especial condenación de costas.